Filed 12/23/20  In re Mary Jane G. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In the Matter of MARY JANE G. et al., Persons Coming Under Juvenile Court Law. | B305464 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00877A-E) |
| Plaintiff and Respondent, | |
| v. | |
| RICHARD G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Reversed in part, affirmed in part, and remanded with directions.

Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephanie Jo Reagan, Deputy County Counsel, for Plaintiff and Respondent.

---

**INTRODUCTION**

Maria M. (Mother) has eight children: five with appellant Richard G. (Father) and three with Jesse A. In February 2020, the juvenile court sustained two counts of a petition filed by the Los Angeles County Department of Children and Family Services (DCFS) on behalf of all eight children: count b-3 (alleging that Father and Mother "have a history of engaging in violent altercations" which endangered their five children) and count b-1 (alleging Mother and Jesse endangered all eight children by exposing them to domestic violence). The court ordered Father's children to remain in his and Mother's custody and, as part of his case plan, required him to submit to seven random drug tests, attend Alanon/Alateen meetings, and receive individual counseling to address issues of anger

management, domestic violence, protective parenting, and past trauma.[1]

Father challenges the court's finding of jurisdiction over his children based on count b-3, as well as the portions of the court's dispositional order relating to him. Specifically, Father contends that: (a) though Mother's failure to appeal ensures the juvenile court will retain jurisdiction over the children regardless of how we adjudicate his jurisdictional appeal, we should nevertheless consider its merits; (b) substantial evidence does not support the court's finding of jurisdiction based on the b-3 count; and (c) the court abused its discretion by ordering Father to undergo drug tests, attend Alanon/Alateen meetings, and receive individual counseling.

We agree with Father. Specifically, we elect to consider Father's appeal on the merits, both because some portions of the appealed dispositional order arose from the jurisdictional finding, and because his appeal could change his status as an "offending" parent to a "non-offending" parent. Additionally, we conclude substantial evidence does not support the court's jurisdictional finding based on count b-3, because it is undisputed that the last incident of domestic violence between Father and Mother, though extremely severe, occurred in 2012, and there was no indication there would be any future violence. Finally, we

---

[1]     Neither Mother nor Jesse appealed any of the court's orders, and they are not parties to this appeal.

3

conclude the court abused its discretion in ordering Father to submit to drug testing, attend Alanon/Alateen meetings, and receive individual counseling because there was no evidence any of these programs was necessary. We therefore reverse these portions of the court's jurisdictional and dispositional orders, affirm the remaining portions, and remand for the juvenile court to exercise its discretion to determine whether, in light of the views expressed herein, it is necessary to order Father to participate in any programs or services.

## STATEMENT OF RELEVANT FACTS

### A. *The Family*

Father's and Mother's children are Mary Jane G. (who was 17 years old at the disposition hearing), Samara G. (who was 16), Richard G., Jr. (who was 15), Gabriel G. (who was 13), and Raymond G. (who was 11) (the G. children). Also named in the petition were the three children of Mother and Jesse A. (the A. children, who were four, three, and one at the disposition hearing).

### B. *Background*

In 2006, Father was observed selling marijuana out of his car with his children in the back seat. A subsequent search of the family home disclosed 30 grams of marijuana, packaged to sell. Though the house was dirty and smelled of marijuana, an allegation of general neglect was deemed unfounded. Father was convicted of possession of

4

marijuana, and sentenced to 35 months of probation and five days in jail.

In December 2010, Father was arrested for battery of a spouse or ex-spouse, but "released due to furtherance of justice." In January 2012, Father was again detained for battery of a spouse or ex-spouse, but the charge was again dismissed "due to furtherance of justice." In February 2012, Father assaulted, kidnapped, and raped Mother; while the children were not present during the incident, an allegation of emotional abuse against Father was substantiated. Father was convicted and sentenced to three years in prison.[2]

In March 2013, Mother was incarcerated for selling methamphetamine, and Father's parents became the children's legal guardians. Mother was released in April 2014. By 2016, it was reported that Mother and Father had separated; after Father's release from custody, he lived with his parents and the children, who visited Mother every other weekend.

In March 2017, DCFS learned that Richard Jr. had participated in a "contest on youth violence," where he shared his own experience with violence, stating that three to five years earlier, he had witnessed domestic violence between Mother and Father. Father would "'get high'" and

_____

[2]     Father self-reported that he received a four-year sentence.

argue with Mother, and he could hear Father "being physical" with her. This referral was "Evaluated Out."[3]

In September 2017, an incident occurred in which, after Father walked Mary Jane, Samara, and Richard Jr. to Mother's car, Richard Jr. punched Samara; Father reacted by "smack[ing]" him, then choking him and punching him in the stomach. Mother, who was sitting in the driver's seat, tried unsuccessfully to intervene; Mary Jane was able to push Father off Richard Jr. When Mother drove away, Mary Jane called law enforcement (despite an admonition from her paternal grandmother that doing so would result in the children being placed in foster care). Richard Jr. stated that his lip hurt, and he had a bruise on his hip, but he did not complain of any other pain. This was reportedly the first and only time Father had hit any of the children. After this incident, the children began living with Mother, with visits from Father occurring only at public places near Mother's home (Mother lived in Palmdale, Father in Los Angeles). The children reported they were safe and happy, and wanted to maintain a relationship with Father. Father was remorseful, and all the children denied being afraid of him. Father admitted he "may have overreacted to the situation" but reported he had spoken with Richard Jr. and they were

---

[3] "[T]he term 'evaluated out' means the child protective services screener did not find sufficient evidence of physical abuse or child abuse and neglect to assign the referral to an investigation." (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1149, fn. 4.)

on good terms.  Allegations of emotional abuse, risk of sibling abuse, and physical abuse by Father were all deemed inconclusive.

In August 2019, DCFS received a referral of emotional abuse by Mother's partner Jesse.  Mother reported that Jesse was intoxicated and kicking and damaging doors.  Jesse admitted to a history of drinking, but claimed to have reduced his alcohol intake.  He tested positive for marijuana.  Over the course of its investigation, DCFS also spoke with Father, who stated that Mary Jane, Samara, and Richard Jr., who were now living with him, were doing well behaviorally and academically.  Father confirmed that he and Mother had a "history of domestic violence" but stated they were "currently doing well communicating and co-parenting," and had a "'really good relationship.'"  He opined it was "'important for the kids, they shouldn't see us having issues like that.'"  The emotional abuse allegation against Jesse was deemed inconclusive.

### C.    *The Current Petition*

In October 2019, DCFS received a referral alleging that Jesse had come home drunk, argued with Mother, and shoved her, causing her to fall.  Jesse was arrested.  When DCFS investigated, Mother reported that Jesse "'got drunk again'" and broke a lot of his stuff, but denied he physically hurt her.  Mother confirmed Jesse was throwing things around during the argument, and said that while this was occurring, she was thinking back to a time when Father

"'would throw things and hit me.'" Mother also stated that after Jesse had left, he returned later that night to kick the front door and slash the tires to her car.

DCFS spoke individually with Mary Jane, Samara, and Richard Jr., who were still living with Father. Each reported things were going well at Father's home, and denied all forms of abuse, neglect, or substance use by anyone around them.

DCFS was unable to speak with Jesse until December 3, 2019. Jesse denied drinking, pushing Mother, or kicking the door, but admitted to "'pop[ping] one tire'" because he was "'angry and frustrated.'" DCFS obtained a removal order that same day, and removed the A. children from Jesse on December 6. When Father was informed that there would be a detention hearing on December 11, he stated the children had never reported any domestic violence in Mother's home, but Father "'kind of knew in a sense', that something was going on . . . based on the way his son Richard was behaving at home." Father specified that Richard Jr. was "'really quiet'" and noted "'he's not doing good in school,'" so "'maybe he's seen something.'" Father also stated that while he and Mother had "'disputes in the past,'" "'she doesn't have to go through this, no one should.'" In its Detention Report, DCFS listed one of the family's strengths as that Father was "[e]mployed, [provided] family support, [and] maintain[ed] a strong relationship [with] and [wa]s an active parent to his children." Additionally, all the G. children were "appropriately developed, [were] doing well

8

in school, [and had a] strong relationship with parents and siblings."

In December 2019, DCFS filed a petition under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1) (Sections 300(a) and 300(b)(1)) alleging two counts under Section 300(a), and three counts under Section 300(b)(1). Father was named only in counts a-2 and b-3, which identically alleged that: "The [G.] children['s] . . . mother, Maria M[.] and father, Richard G[.] Sr. have a history of engaging in violent altercations. On prior occasions, the father struck the mother and threw items at the mother. The father has a history of two criminal convictions for Inflict[ion of] Corporal Injury on a Spouse/Cohabitant and one conviction for Kidnapping. Such violent conduct on the part of the father against the mother endangers the children's physical health and safety and places the children at risk of serious physical harm[,] damage[,] and danger."

Counts a-1 and b-1 alleged that Mother and Jesse exposed all the children to a domestic violence incident in which Jesse pushed Mother, threw and broke household items, kicked a door, and slashed the tires to Mother's car, resulting in his arrest for domestic violence. Count b-2 alleged that Jesse had a history of substance abuse, was a current abuser of alcohol and marijuana, and used drugs while caring for the children, and that Mother knew of Jesse's drug problem but failed to protect the children. On December 11, 2019, the court found a prima facie case to

detain the children, and released the G. children to both Mother and Father.

### D. *Statements from the Parents and the G. Children*

#### 1. Domestic Violence Between Father and Mother

Regarding the allegations of domestic violence between Father and Mother, no one reported any recent incidents. Mary Jane, Samara, and Richard Jr. all described past incidents of domestic abuse by Father against Mother, but Samara stated, "We now live as if it didn't happen and everyone moved on." Gabriel said he remembered only the night his dad went to jail, and Raymond stated he was too young to remember, but that he felt safe, comfortable, and loved by both Mother and Father.

Mother stated that Father would give her black eyes, and would break things. Father admitted to the domestic violence. He reported that he had been incarcerated "about five times for domestic violence, possession of marijuana[,] and burglary," and clarified that he was in "jail about 2-3 times for domestic violence." The third time, he claimed he was sentenced to four years in prison, which was "'one of the best thing[s] that occurred, [because] while I was incarcerated[,] I was reading the bible, being part of Christian groups and the whole term I did it at peace. I participated in conflict resolution classes, obtained my GED and [learned] vocational computer programs.'" He stated,

"'Regardless of the issues of drugs and domestic violence[,] I was a good father. Right now[,] I am 1000 times better. My portrait in the past is my past.'" Father urged DCFS to "[t]alk to my kids [about] how they feel about me. They are good, I don't []pose any threats to my kids. The last domestic violence incident that I had was in 2012 with their mother. . . . This did happen in the past, I didn't say it didn't[,] but that's not who I am." Father provided DCFS with documentation showing that he had successfully completed a 52-week domestic violence program in 2016, along with certificates for other classes.

### 2. Striking Richard Jr.

Regarding the 2017 incident when Father struck Richard Jr., Mary Jane reported that Samara was teasing Richard Jr., or had pinched him, and he responded by punching her. Father reacted by "strangl[ing Richard Jr.] a little." After the incident, they stopped speaking with Father for two months, and Father apologized to both Mary Jane and Richard Jr. Mary Jane elaborated, "'We're not afraid of my dad. With Richard [Jr.], it was a onetime thing and my dad was angry at that moment. He doesn't act like that.'"

Richard Jr. admitted that he hit his sister Samara because she was "'talking crap,'" and that Father then "'hit me on my face a couple of times and my older sister was hitting him back. . . . It was the first and only time he hit me like that.'" When asked about his relationship with

Father, Richard Jr. responded, "'I feel safe, I just lost a lot of respect for him. My relationship did change but I love my dad.'"

### 3. Substance Abuse

None of the children reported that Father abused drugs. Several children stated that Jesse both drank and smoked marijuana.

### E. *Adjudication and Disposition*

In February 2020, the court held both the adjudication and disposition hearings. No witnesses testified. Father's counsel asked the court to dismiss the a-2 and b-3 counts because the domestic violence incidents with Mother had occurred in 2012 or before, the incident with Richard Jr. in 2017 was an isolated one, and given that Father had completed relevant programs and was currently parenting all his children successfully, there was no current risk of harm to the children. He added that if the court were inclined to sustain the petition, he would "ask the court to conform to proof and consider striking the a-2" count. Mother's counsel asked only that the a-2 count be dismissed due to insufficient evidence of a risk to the children, noting that the court had released the children to both Mother and Father.[4] Mother's counsel stated that Mother was prepared

---

[4] Counsel stated that as to the identical count b-3, "because of our agreement with the Department, I will submit the issue of that count to the court."

to plead "no contest" to the remainder of the petition.  The children's counsel asked the court to sustain the a-2 and b-3 counts because the G. children had witnessed consistent and frequent domestic violence between Mother and Father, and were "at risk of continuing emotional harm."[5]  DCFS's counsel joined the arguments of the children's counsel, and noted that although Father completed a 52-week domestic violence program in 2016, he still struck Richard Jr. in 2017.

The court sustained the b-3 count "based on the evidence presented, and significantly the fact that after the G[.] Father completed the domestic violence classes, he had what this court would view as a second and significant domestic violence incident involving one of the minors, which does present prima facie evidence to this court that these children are at risk of serious physical harm, damage or danger."  The court dismissed the a-2 count for "insufficiency of the evidence."  After confirming that Mother and Jesse were pleading no contest to the b-1 count (alleging Mother and Jesse endangered the children by exposing them to domestic violence), the court dismissed the remaining counts and proceeded to disposition, stating it would be "considering

---

[5]     The petition contained no counts under Welfare and Institutions Code section 300, subdivision (c), which permits jurisdiction to be found if a minor "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage . . . as a result of the conduct of the parent or guardian . . . ."  (Welf. & Inst. Code, § 300, subd. (c).)

the evidence previously presented as well as the sustained petition."

Again, no witnesses testified. Without hearing argument, the court ordered the G. children to remain in Mother's and Father's physical custody, and ordered Father to submit to seven random or on-demand drug tests, attend Alanon/Alateen meetings, and undergo individual counseling to address issues of domestic violence, anger management, protective parenting, and past trauma.[6] Father's counsel objected, stating that Father was "asking the court to order family counseling [and] family preservation" but would "ask the court [to] narrowly tailor the case plan to this sustained petition" and was "especially objecting to the 12-step programs and the drug testing as there were no substance abuse counts sustained against [Father]." The court noted the objections, agreed to order family preservation services, but did not otherwise modify its order. Father timely appealed.

---

[6] "Al-Anon is a mutual support program for people whose lives have been affected by someone else's drinking" and "Alateen, a part of the Al-Anon Family Groups, is a fellowship of young people (mostly teenagers) whose lives have been affected by someone else's drinking whether they are in your life drinking or not." (Al-Anon Family Groups, What Is Al-Anon and Alateen? <https://al-anon.org/newcomers/what-is-al-anon-and-alateen/> [as of December 22, 2020].)

## DISCUSSION

### A. *We Will Consider Father's Jurisdictional Challenge*

Father recognizes that Mother's failure to appeal the court's finding of jurisdiction will leave the juvenile court with jurisdiction over the G. children regardless of the merits of his jurisdictional challenge. He nonetheless urges us to consider his appeal because he also challenges the court's dispositional order, and because the outcome of the challenge could alter his status from "offending" parent to "non-offending" parent.

In *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*), our colleagues in Division Three held that "we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) 'could have other consequences for [the appellant], beyond jurisdiction' [citation]." (*Id.* at 762-763.) Because the outcome of the appeal in *Drake M.* was "the difference between father's being an 'offending' parent versus a 'non-offending' parent" which "distinction may have far-reaching implications with respect to future dependency proceedings in this case and father's parental rights," the court reviewed father's appeal

15

on the merits, despite the fact that dependency jurisdiction over the minor would remain in place. (*Id.* at 763.)

At the beginning of the dispositional hearing below, the court explicitly stated it would be "considering the evidence previously presented as well as the sustained petition." Moreover, the jurisdictional finding was based on Father's past violence toward Mother, and as part of his case plan, Father was ordered to receive individual counseling to address issues of domestic violence, anger management, and protective parenting. Therefore, the jurisdictional finding served in part as the basis for the dispositional order, which Father also challenges on appeal.

Additionally, reversing the court's jurisdictional order as to Father would make the difference between Father's being an offending parent and a non-offending parent. (*Drake M., supra,* 211 Cal.App.4th at 763; see also *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 (*Daisy H.*) [though juvenile court awarded parents joint custody and terminated jurisdiction during pendency of appeal, court considered father's challenge to jurisdictional findings because "[t]he court's jurisdictional findings as to Father [regarding physical abuse of Mother], if erroneous, could have severe and unfair consequences to Father in future family law or dependency proceedings"]; cf. *In re I.A.* (2011) 201 Cal.App.4th 1484, 1493 [not reaching merits of appeal of jurisdictional finding where father "has not suggested a single specific legal or practical consequence from this

finding, either within or outside the dependency proceedings"]).

DCFS argues *Drake M.* is inapposite because Father challenges only the drug-related and protective-parenting portions of the disposition order, which did not arise from the jurisdictional finding. DCFS misinterprets Father's appeal. Father challenges the entirety of the court's dispositional order as it applies to him; he simply singles out as particularly troublesome the portions relating to his participation in drug-related programs and requiring him to receive individual counseling to address protective parenting. Indeed, he concludes his brief by requesting that "the court's dispositional orders directed at father be reversed in their entirety" and only asks "in the alternative," that the orders requiring Father to participate in drug-related services and protective parenting services be reversed.[7]

## B. *The Court Erred in Sustaining Count B-3 as to Father*

We review a court's finding of jurisdiction for substantial evidence. (*In re A.M.* (2010) 187 Cal.App.4th 1380, 1387.) Substantial evidence is "evidence that is

---

[7] DCFS also attempts to distinguish *Drake M.* by arguing that the behavior that led to the sustained petition challenged in *Drake M.* was a "benign" activity (marijuana use) whereas the behavior here is not. If anything, the distinction militates in favor of our exercise of jurisdiction, as the finding below is more likely to adversely affect Father in the future.

'reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case.'" (*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

Count b-3 of the petition alleged that Mother and Father "have a history of engaging in violent altercations. On prior occasions, the father struck the mother and threw items at the mother. The father has a history of two criminal convictions for Infliction [of] Corporal Injury on a Spouse/Cohabitant and one conviction for Kidnapping. Such violent conduct on the part of the father against the mother endangers the children's physical health and safety and places the children at risk of serious physical harm[,] damage[,] and danger." It is undisputed that when this petition was filed, Mother and Father had been separated for over three years, Mother was living with Jesse and their three children, and there were no allegations of any recent domestic violence between Mother and Father.

We find instructive our opinion in *In re Jesus M.* (2015) 235 Cal.App.4th 104. There, the juvenile court sustained a petition under Section 300(b) where "Father and Mother had a history of engaging in violent altercations in the children's presence" and "Father violated the restraining order put in place to protect Mother." (*Id.* at 110.) In response to DCFS's argument that the jurisdictional finding was "supported by the evidence of domestic violence," this court noted that "the parents had long been separated, the two incidents Mother could recall had occurred more than three years earlier, and

18

there was no evidence of current violent behavior." (*Id.* at 113.) Thus, despite Father's "history of physical violence against Mother and a current pattern of harassing her in flagrant disregard of the restraining order," we reversed the jurisdictional finding, because the evidence "did not demonstrate a risk of physical harm to the children justifying the assertion of jurisdiction under subdivision (b) of section 300." (*Ibid.*; see also *Daisy H.*, *supra*, 192 Cal.App.4th at 717 [reversing jurisdictional finding where "physical violence between the parents happened at least two, and probably seven, years before the DCFS filed the petition," and "[t]here was no evidence that any of the children were physically exposed to the past violence between their parents and no evidence of any ongoing violence between the parents who are now separated"].)

Here, it is undisputed that Father committed no acts of domestic violence toward Mother after 2012. While Father admits to striking Richard Jr. in 2017, nothing in the record suggests this behavior ever reoccurred, and all five of the G. children reported having no fear of Father and feeling safe with him. Additionally, DCFS was informed of and investigated the 2017 incident when it occurred, and found the allegations of abuse by Father to be inconclusive. When DCFS filed its petition in this case, this incident was not alleged as a basis for jurisdiction. Even assuming conduct DCFS found insufficient to demonstrate abuse when it occurred could be substantial evidence supporting jurisdiction, a juvenile court cannot sustain a petition based

19

on an incident unrelated to the petition's allegations.  (*In re Andrew S.* (2016) 2 Cal.App.5th 536, 544 [reversing jurisdictional finding and noting that "[t]o the extent the juvenile court [found jurisdiction because it] interpreted the petition to charge that [father] had failed to protect the children from [mother]'s physical abuse, the Department never made any such allegation; and [father] had no notice or opportunity to defend against it"].)  The allegations in the petition relating to Father cited only his past domestic abuse against Mother, not any conduct directed toward his children.  (See *In re Wilford J.* (2005) 131 Cal.App.4th 742, 751 ["a parent whose child may be found subject to the dependency jurisdiction of the court enjoys a due process right to be informed of the nature of the hearing . . . in order that he or she may make an informed decision whether to appear and contest the allegations"]; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188 [same].)

DCFS argues that substantial evidence supports the court's jurisdictional finding because: (1) Father's violence towards Mother was constant, not a one-time event, and the G. children were present for at least some of it; (2) though Father had not been violent toward Mother for eight years, he lacked the opportunity because he was incarcerated for four of those years, and they had separated; (3) there was no evidence Father's "'violent, abusive tendencies [were] only limited to "domestic partners," and not to other women to whom the minors might be exposed, such as Father's dates

20

and acquaintances'"; and (4) in 2017, he struck Richard Jr. We disagree that this constitutes substantial evidence.

Whether Father's violence towards Mother happened once or several times, it is undisputed it ceased eight years prior to the court's finding of jurisdiction. In *Jesus M.*, we held that a juvenile court's finding of jurisdiction could not be sustained based on the parents' "history of engaging in violent altercations" (i.e., more than one incident of violence) because the incidents occurred "years ago." (*Jesus M.*, *supra*, 235 Cal.App.4th at 110, 112.) Similarly, while a child's presence during the occurrence of domestic violence may be a factor for a court to consider, the G. children's presence during the past domestic violence also occurred eight years earlier.

Additionally, while it is true that Father had no opportunity to behave violently toward Mother while in prison, there is no evidence he was violent toward her in the years following his release. While DCFS speculates that Father *might* be violent toward others, the burden of proving jurisdiction falls to DCFS, and there was no evidence Father was or would be violent with other women in his life. (See, e.g., *In re Isabella F.* (2014) 226 Cal.App.4th 128, 137 ["In dependency proceedings, the social services agency has the burden to prove by a preponderance of the evidence that the

21

minor who is the subject of the dependency petition comes under the juvenile court's jurisdiction"].)[8]

Finally, as discussed above, the incident between Father and Richard Jr. occurred in 2017, and as Father notes, nothing in the record suggests this was more than "a one-time occurrence during which father, in an effort to protect his daughter, got angry with his son and took unwarranted action which he later regretted and which never happened again." All children reported feeling safe with Father, and Richard Jr. himself stated, "'I feel safe, I just lost a lot of respect for him. My relationship [with

---

[8] DCFS's citation to *In re Heather A.* (1996) 52 Cal.App.4th 183 is therefore unhelpful. In *Heather A.*, there was evidence that the father had abused both his previous and current wife, and the abuse that precipitated the petition occurred three months before it was filed. (*Id.* at 187, 194.) An expert profile of the father showed he was "prone to hostility and violence in his relationships with others, including his relationships with women" and that he had a "'long history of disruptive emotional relationships with women.'" (*Id.* at 194-195.) Thus, in response to the father's suggestion that the juvenile court could have protected his children short of removal by returning them to him on condition that he not invite a domestic partner into his home, the appellate court held this insufficient, as there was no indication the father's anger and hostility "are only manifest when Father is interacting with a domestic partner," nor that "Father's violent, abusive tendencies are only limited to 'domestic partners,' and not to other women to whom the minors might be exposed, such as Father's dates and acquaintances." (*Id.* at 196.) Here, by contrast, there is no evidence Father had engaged in domestic violence against anyone but Mother, or that he had committed domestic violence against anyone after 2012.

Father] did change but I love my dad.'" Moreover, as noted, DCFS did not plead this incident as a basis for jurisdiction in the petition, and a petition cannot be sustained based on unrelated incidents. (*In re Andrew S.*, *supra*, 2 Cal.App.5th at 544.) On this record, substantial evidence does not support the court's finding of jurisdiction based on count b-3, the only sustained count naming Father.

### C. *The Court Abused Its Discretion on Disposition*

Father admits that even if he is non-offending, the court was within its power to order him to participate in programs. "The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*In re K.T.* (2020) 49 Cal.App.5th 20, 25). We review the juvenile court's disposition orders for an abuse of discretion, and review for substantial evidence the findings of fact on which dispositional orders are based. (*Ibid.*) Here, the court ordered Father to undergo seven random drug tests, attend Alanon/Alateen meetings, and receive individual counseling to address issues of domestic violence, anger management, protective parenting, and past trauma.

23

The court expressed no basis for its order that Father submit to drug testing. The petition contained no allegation that Father abused substances, and nothing in the record suggests Father had any current substance abuse issues. On appeal, DCFS argues the order was justified because evidence showed Father had a prior drug possession charge, because Richard Jr. claimed that Father's past arguments with Mother were associated at least in part with Father's "'getting high,'" and because Father had five children in his care. We are not persuaded. Father's charge for drug possession occurred in 2006, 14 years before drug testing was ordered. Because the domestic violence between Father and Mother occurred eight years before the disposition hearing, any exacerbating effects of drug use necessarily also occurred eight years prior. Both these events are too remote to be the basis for an order for drug testing. And the mere fact that Father would be caring for children is also insufficient. On this record, we discern no basis for ordering Father to submit to drug testing.

Similarly, there was no basis to order Father to attend Alanon or Alateen meetings. The only person alleged to have potential substance abuse problems in this case was Jesse. But there is no evidence Father was affected by Jesse's substance abuse issues. DCFS argues it was proper to order Father to participate in Alanon/Alateen "for the support of his children," but, because the court removed the A. children from Jesse (likely resulting in Jesse's moving out of the home he shared with Mother), it is unclear whether

24

the G. children would even encounter Jesse in the near future.

DCFS makes no attempt to justify the court's order for individual counseling on the subjects of anger management, domestic violence, or past trauma and, in light of our discussion above, we find the court also abused its discretion in ordering individual counseling on those issues.  On the subject of protective parenting, DCFS argues the court's order is justified based on Father's "ignor[ing] his suspicions that the children were being exposed to domestic violence." We take issue with DCFS's characterization of Father's "suspicions."  When informed of the allegations against Jesse, Father first "stated that his children have never reported any domestic violence in mother's home."  He then said, he "'kind of knew in a sense', that something was going on . . . based on the way his son Richard was behaving at home."  Father specified that Richard Jr. was "'really quiet'" and noted "'he's not doing good in school,'" so "'maybe he's seen something.'"  In December 2019, Richard Jr. was one month shy of turning 15 years old.  Any inference that Father needed counseling to address protective parenting because he did not immediately discern that domestic violence was occurring in Mother's and Jesse's home based on his teenage son's being "really quiet" and not doing well in school was unwarranted.

## DISPOSITION

The portion of the court's jurisdictional order sustaining count b-3 is reversed as to Father. The portion of the court's dispositional order requiring Father to submit to drug testing, attend Alanon/Alateen meetings, and undergo individual counseling is reversed. The remaining portions of the jurisdictional and dispositional orders are affirmed. On remand, the juvenile court shall exercise its discretion to consider whether it is necessary to require Father to participate in any programs or receive any services in light of the views expressed herein, and shall make any appropriate orders based on that determination.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.

26